# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO.   H-12-578-23 |
| | § | |
| TIEN VAN NGUYEN | § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas and Nancy G. Herrera, Assistant United States Attorney, and the defendant, **Tien Van Nguyen** and the defendant's counsel, James Randall Smith, state that they have entered into an agreement pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## The Defendant's Agreement

1.      The defendant agrees to plead guilty to Count **Two** of the Indictment. Count Count **Two** charges the defendant with a conspiracy of maintaining a place for the purpose of purpose of manufacturing, possessing and using controlled substances. The controlled substance involved was one thousand (1000) or more marijuana plants , a Schedule I Controlled Substance in violation of 21 U.S.C. §§ 846 and 856(a)(1). The defendant, by

entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt.

## **Punishment Range**

2.      The **statutory** maximum penalty for each violation of 21 U.S.C. §§ 846, 856(a)(1), is imprisonment of up to twenty (20) years and a fine of not more than $500,000.00.  Additionally, the defendant may receive a term of supervised release after imprisonment of not more than three (3) years.  18 U.S.C. § 3583(b)(1).  Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.  18 U.S.C. § 3583(e)(3).  Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## **Mandatory Special Assessment**

3.      Pursuant to 18 U.S.C. § 3013(a)(2)(A), immediately after sentencing, defendant defendant will pay to the Clerk of the United States District Court  a special assessment in the in the amount of one hundred dollars ($100.00) per count of conviction.  The payment will be will be by cashier's check or money order payable to the Clerk of the United States District District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas   77208,

Attention: Finance.

## **Fine and Reimbursement**

4.      Defendant understands that under the United States Sentencing Commission, Guidelines Manual, (Nov. 2012) (hereinafter "USSG"), the Court is permitted to order the defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release;  if any is ordered.


5.      Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately, and defendant will not attempt to avoid or delay payment.

6.      Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) prior to sentencing if he is requested to do so. In the event that the Court imposes a fine or orders the payment of restitution as part of the Defendant's sentence, the Defendant shall make complete financial disclosure by truthfully executing a sworn financial statement immediately following his sentencing.


## **Waiver of Appeal**

7.      Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  The defendant agrees to waive the right to appeal the sentence sentence imposed or the manner in which it was determined **on any grounds set forth in 18 18 U.S.C. § 3742.** Additionally, the defendant is aware that 28 U.S.C. § 2255,  affords the

the right to contest or "collaterally attack" a conviction or sentence after the conviction or

sentence has become final.  The defendant waives the right to contest his/her conviction or

or sentence by means of any post-conviction proceeding.

The defendant further waives any rights under Title 28, U.S.C., § 2241 to challenge

the manner in which the sentence is executed or the legality of the defendant's detention.  In

exchange for the Agreement with the United States, Defendant waives all defenses based on

venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations

with respect to any prosecution that is not time barred on the date that this Agreement is

signed, in the event that (a) defendant's conviction is later vacated for any reason, (b)

defendant violates any provision of this Agreement, or ( c) defendant's plea is later

withdrawn.

8.      In agreeing to these waivers, defendant is aware that a sentence has not yet

been determined by the Court.  The defendant is also aware that any estimate of the possible

possible sentencing range under the USSG that he may have received from his counsel, the

the United States or the United States Probation Office ("USPO"), is a prediction, not a

promise, **did not induce his/her guilty plea**, and is not binding on the United States, the

USPO, or the Court.  The United States does not make any promise or representation

concerning what sentence the defendant will receive.  Defendant further understands and

agrees that the USSG are "effectively advisory" to the Court.  United States v. Booker, 543

543 U.S. 220, 245 (2005).  Accordingly, defendant understands that, although the Court must

must consult the USSG and must take them into account when sentencing defendant, <u>Booker</u>,

<u>Booker</u>, 543 U.S. at 264, the Court is not bound to follow the USSG nor sentence defendant

defendant within the calculated guideline range.

9.    The Defendant understands and agrees that each and all waivers contained in

the Agreement are made in exchange for the concessions made by the United States in this

plea agreement.  In particular, if the Defendant files a motion to appeal upon sentencing, the

government will seek specific performance of his waiver of appeal.

### The United States' Agreement

10.    The United States agrees to each of the following:

(a)    If defendant pleads guilty to **Count Two** of the Indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss the remaining count of the indictment at the time of sentencing;

(b)    At the time of sentencing, the United States agrees not to oppose defendant's anticipated request to the Court and the USPO that he receive a two (2) level downward adjustment pursuant to **USSG § 3E1.1(a)** should the defendant accept responsibility as contemplated by the **USSG**;

(c)    If the defendant qualifies for an adjustment under **USSG § 3E1.1(a)**, the United States agrees not to oppose the defendant's request for an additional one level departure based on the timeliness of the plea or the expeditious manner in which the defendant provided complete information regarding his/her role in the offense if the defendant's offense level is 16 or greater;

(d)    If the defendant should qualify under **USSG § 5C1.2**, the United States agrees not to oppose the defendant's request for its application at sentencing, and

(e)     The United States agrees to recommend a sentence at the low end of the established guideline.

## United States' Non-Waiver of Appeal

11.     The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the USPO in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

( c)    to seek resolution of such factors or facts in conference with defendant's counsel and the USPO; and,

(d)     to file a pleading relating to these issues, in accordance with USSG § 6A1.2 and 18 U.S.C. § 3553(a).

## Sentence Determination

12.     Defendant is aware that the sentence will be imposed after consideration of the the USSG, which are only advisory, as well as the provisions of 18 U.S.C. § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of of the sentencing judge after the Court has consulted the applicable USSG. Defendant understands and agrees the parties' positions regarding the application of the USSG do not not bind the Court and that the sentence imposed is within the discretion of the sentencing

6

judge.  If the Court should impose any sentence up to the maximum established by statute, or

statute, or should the Court order any or all of the sentences imposed to run consecutively,

Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to

fulfill all of the obligations under this plea agreement.

### Rights at Trial

13.     Defendant represents to the Court that he is satisfied that his attorney has

rendered effective assistance.  Defendant understands that by entering into this agreement, he

surrenders certain rights as provided in this plea agreement.  Defendant understands that the

rights of a defendant include the following:

(a)     If the defendant persisted in a plea of not guilty to the charges, defendant
would have the right to a speedy jury trial with the assistance of counsel.  The
trial may be conducted by a judge sitting without a jury if the defendant, the
United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other
evidence against the defendant. Defendant would have the opportunity to
confront those witnesses and his attorney would be allowed to cross-examine
them.  In turn, the defendant could, but would not be required to, present
witnesses and other evidence on his own behalf.   If the witnesses for
defendant would not appear voluntarily, he could require their attendance
through the subpoena power of the court.

( c)    At a trial, defendant could rely on a privilege against self-incrimination and
decline to testify, and no inference of guilt could be drawn from such refusal to
testify. However, if the defendant desired to do so, he could testify on his/her
own behalf.

### Factual Basis for Guilty Plea

14.     Defendant is pleading guilty because he **is** guilty of the charges contained in

7

**Count Two** of the Indictment.  If this case were to proceed to trial, the United States could could prove each element of the offense beyond a reasonable doubt.  The following facts, among others, would be offered to establish the defendant's guilt:

Since November of 2011, the Drug Enforcement Administration (DEA) along with the Harris County Sheriff's Office (HCSO), the Fort Bend County Sheriff's Office (FBCSO), the Houston Police Department (HPD) and the Texas Department of Public Safety (DPS) have been investigating a large scale domestic marijuana cultivation and distribution organization that is based in Houston, Texas and the surrounding communities.  On August 21, 2012, Agents and officers executed search warrants and conducted consent searches at over 60 residences affiliated with this organization **DTO)** and seized clandestine marijuana cultivation operations in thirty-nine, totaling just under 14,000 living marijuana plants.

Between November 2011 and August 2012, Agents conducted surveillance of the defendants and of the numerous residences as they were identified. Besides personal surveillance, Agents utilized pole cameras on various houses and GPS trackers on various vehicles pursuant to Court orders.

Evidence would be presented that each of the houses had common characteristics. Windows were covered to prevent light from coming in or interior lights shining out. The houses had extensive duct work running inside the grow rooms for ventilation, fans to aid in circulation and exhaust were set up and in open view throughout each of the houses. The houses had secondary electrical breaker boxes used to bypass the normal meter to prevent the utility company from noticing the high kilowatts used in the cultivation of marijuana inside the houses. The stench of the growing marijuana was overwhelming the second one crossed the threshold of the houses. Electrical wires powering the ballast and converter used to power the grow lights were visible. The grow lights in each room could be seen hanging from the ceilings. Anyone walking into any one of the houses containing the growing marijuana plants would have noted that marijuana was being grown.

Only those persons involved in the conspiracy to establish and maintain the houses for for the clandestine cultivation of hydroponic marijuana and engaged in acts to further the object of the conspiracy were authorized access to the houses. The evidence will further prove the tender of a house is paid by the director or overseer of the crop approximately $2500 to $3500 per month for tending the marijuana crop and sometimes a bonus following the harvest, or received a percentage of the net proceeds

following a harvest ranging from approximately 35% up to 50% if the tender obtained the lease on the property in their name. Evidence would further show that co-conspirators often work together to prepare a house for use as a grow house, to train or instruct on tending the marijuana plants, to arrange for the delivery or to deliver materials or equipment necessary for cultivation of the marijuana plants, to harvest or assist in the harvest of mature marijuana plants, and/or to dismantle a grow house.

Evidence would further show that the U.S. currency listed in the indictment's forfeiture notice constituted proceeds of the charged conspiracy and the automobiles and equipment listed in the indictment were used to facilitate the drug conspiracy charged.

Defendant **Tien Van NGUYEN** was the tender responsible for the marijuana crop being cultivated at **3423 LaFleur, Spring, TX.** Investigating agents seized **387** growing marijuana plants from this residence on August 21, 2013. **Tien Van NGUYEN** was seen going into the **LaFleur** house almost on a daily basis as early as February 2012 to August 2012. Other co-defendant seen entering the residence along with **Tien Van NGUYEN** were Johnny NG and Gioi NGUYEN.

As early as December 2011, the defendant **Tien Van NGUYEN**, who drove a white Toyota Camry, was seen at 9922 Valance Way, the residence of co-defendants Thang Van DOAN, Long DO, Tam NGUYEN and Long NGUYEN. **Tien Van NGUYEN** was also seen meeting with co-defendants Vinh LE and Dinh LE. The name of the person listed on the utilities at **3523 LaFleur** is the same as the person listed on the utilities for 24006 Lestergate Dr, Spring TX, yet another house associated with this organization found to contain growing marijuana plants on August 21, 2012.

The defendant **NGUYEN** was arrested at his apartment at 16414 Steubner Airline Rd, #703, Houston TX on August 21, 2012. At the residence agents discovered documents containing the **LaFleur** address and an account number used to pay the rent. Additionally, defendant **Tien Van NGUYEN's** residence address was listed on the registration information for the vehicle driven by co-defendant Johnny NG. NG was also observed going to **Tien Van NGUYEN's** apartment.

The evidence would show that just under 14,000 plants along with some harvested marijuana were seized during the searches of August 21, 2012. The searches that occurred on other days during the course of this investigation totaled approximately approximately 6,000 marijuana plants. On each of the searches the agents would pull pull the plants exposing the viable root system while counting them. The pulling and

9

counting were captured on video. The agents would testify from their experience in the investigation and seizing of marijuana plants in numerous other cases that what was seized in this investigation were viable marijuana plants. A qualified forensic chemist from the DEA laboratory would testify that the representative plants submitted for analysis were tested pursuant to the established methods and guidelines. Further that the results of the test established that all the plants submitted were in fact marijuana, a Schedule I Controlled Substance.

**Breach of Plea Agreement**

15.    If defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and the defendant's plea and sentence will stand. If at any time defendant retains, conceals or disposes of assets in violation of this plea agreement, or if defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Complete Agreement**

16.    This written plea agreement consisting of 12 pages, including the attached addendum of defendant and his/her attorney, constitutes the complete plea agreement between the United States, defendant, and his/her counsel. No promises or representations representations have been made by the United States except as set forth in writing in this plea plea agreement. Defendant acknowledges that no threats have been made against him and

and that he is pleading guilty freely and voluntarily because he is guilty.

17.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on this the ___ day of _____, 2013.

_____
**Tien Van Nguyen, Defendant,**

Subscribed and sworn to before me on this the ___ day of _____, 2013.

DAVID J. BRADLEY
CLERK OF THE COURT
UNITED STATES DISTRICT CLERK

By:    _____
Deputy United States District Clerk

APPROVED:

KENNETH MAGIDSON
United States Attorney

By: _____        _____
Nancy G. Herrera                              James Randall Smith
Assistant United States Attorney        Attorney for Defendant

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| v. | § | NO.   H-12-578-23 | |
| | § | | |
| TIEN VAN NGUYEN | § | | |

## PLEA AGREEMENT - ADDENDUM

I have fully explained to defendant his/her rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to defendant the provisions of those Guidelines which may apply in this case. I have also explained to defendant that the USSG are only advisory and the court may sentence defendant up to the maximum allowed by statute per count of conviction.  Further, I have carefully reviewed every part of this plea agreement with defendant. To my knowledge, defendant's decision to enter into this agreement is an informed and voluntary one.

_____    6-5-2013
James Randall Smith, Defense Counsel   Date

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.  My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.  I have read and carefully reviewed every part of this plea agreement with my attorney.  I understand this agreement and I voluntarily agree to its terms.

_____    JUNE-03-2013
Tien Van Nguyen             Date

12